ANDERLE et al., Appellants,

v.

IDEAL MOBILE HOME PARK, INC., Appellee.

[Cite as *Anderle v. Ideal Mobile Home Park, Inc.* (1996), 114 Ohio App.3d 385.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70014.

Decided Sept. 9, 1996.

*Kelley, McCann & Livingstone, Peter M. Poulos* and *Andrew Agati,* for appellants.

*Baker & Hostetler, Robert C. Petrulis* and *Norman S. Jeavons,* for appellee.

PATTON, Judge.

Plaintiff Elmer Anderle and other residents of the Ideal Mobile Home Park appeal from a summary judgment rendered in favor of defendant Ideal Mobile Home Park, Inc.

Up to 1992, the park provided its residents with water from the city of Cleveland. The residents were not billed separately for their water use—the cost of water was included in the monthly rental fee. In mid–1992, the park contracted with Southwest Metering Company to install individual water meters for each residential unit. Residents were billed separately and on a monthly basis for their water use. Southwest charged a $4 monthly administrative fee for water meter reading and billing services. The park did not retain any amount of this fee.

As relevant to the issues presented in this appeal, plaintiff filed a complaint seeking declaratory relief related to the fee. The park subsequently agreed to waive the fee and bill the residents on a quarterly basis. Plaintiff pressed forward with the action, however, amending his complaint to request injunctive relief prohibiting the park from passing the administrative costs to the residents through rent increases. In addition, plaintiff asked the housing court to reim-

burse the residents $40 each, representing the ten months each resident paid the fee.

In a motion for summary judgment, plaintiff argued that the park should have absorbed the administrative fee as a cost under R.C. 3733.10(A)(4). That section requires a park operator who is a party to a rental agreement to maintain in good and safe working order and condition all well and water systems that are supplied or required to be supplied by the park operator. The housing court granted the motion for summary judgment and awarded the plaintiff and the other residents attorney fees in the amount of $7,500.

On appeal, a panel of this court reversed, finding that reasonable minds could differ as to the interpretation of R.C. 3733.10(A)(4) and its applicability under the circumstances. See *Anderle v. Ideal Mobile Home Park, Inc.* (1995), 101 Ohio App.3d 122, 655 N.E.2d 203. In light of the reversal on the fee issue, the panel remanded the attorney fee award for a new determination. *Id.* at 128, 655 N.E.2d at 207–208.

On remand to the housing court, the park filed a motion for summary judgment, citing portions of this court's opinion which called into question plaintiff's interpretation of the park's duty to provide maintenance. The housing court agreed and, without opinion, entered summary judgment for the park. However, the housing court awarded plaintiff attorney fees in the amount of $2,250. Plaintiff appeals the summary judgment; the park appeals the award of attorney fees.

I

█ Plaintiff contends that the housing court erred by granting summary judgment because this court's previous opinion found "reasonable minds could differ as to the interpretation of [R.C. 3733.10(A)(4) ]." *Id.* Although plaintiff concedes that there are no issues of material fact (indeed, plaintiff concedes that there were no issues of material fact at the time the housing court granted the first motion for summary judgment), he contends that the housing court nevertheless should have followed this court's mandate and held a trial on the issues; in other words, plaintiff argues that a question of fact existing for one party must also hold for the other party. The park counters by arguing that this court's opinion simply rejected plaintiff's interpretation of the meaning of the word "maintenance" as used in the statute and that, therefore, the park met its legal obligation to maintain the water system.

R.C. 3733.10 states:

"(A) A park operator who is a party to a rental agreement shall:

"* * *

"(4) Maintain in good and safe working order and condition all * * * water systems that are supplied or required to be supplied by him."

This court originally rejected plaintiff's argument that the requirement to maintain a water system in this section prohibited the operator from passing the costs of running the system to the users, finding that the statute "does not clearly prohibit a park operator from passing on the costs of billing and meter reading to the residents." *Id.* Additionally, the panel found that the word "maintain" related to the operator's duty to keep the system in "good and safe working order and condition," in the sense that it imposed on the operator the responsibility for keeping "the structural part of the system functioning safely." *Id.*

The panel's interpretation of the word "maintain" in this context was dispositive of the fee issue. Notably, the park's motion for summary judgment raised this precise issue, citing this court's previous opinion. Plaintiff did not argue that this interpretation of this statutory language did not apply, but simply maintained that the previous holding that reasonable minds could differ on this interpretation foreclosed summary judgment as a matter of law.

Undeniably, there is no material issue of fact; therefore, our interpretation of R.C. 3733.10(A)(4) is made as a matter of law. *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 466, 639 N.E.2d 425, 430. To the extent that our previous opinion failed to make that point clear, we now state categorically that, as a matter of law, the duty R.C. 3733.10(A)(4) places on park operators to maintain water systems in good and safe working order and condition does not include the responsibility for paying for meter reading and billing expenses on the park operator. The housing court correctly granted summary judgment on this issue.

## II

In its cross-appeal, the park challenges the amount of attorney fees awarded to plaintiff. It claims that the $2,250 award of attorney fees so far exceeded the amount of the actual recovery, $750, as to be unreasonable.

An issue raised in the first appeal (and no longer contested by the parties) concerned the validity of a park rule requiring residents to pay the park a $300 transfer fee upon moving from the park. We found that the transfer fee violated R.C. 3733.11(H)(5), which prohibited manufactured home parks from charging the transfer fee to those residents wishing to sell their homes. *Anderle, supra,* 101 Ohio App.3d at 127, 655 N.E.2d at 207.

When plaintiff asked the housing court to award him attorney fees, he asked for $28,785. Thirty percent of that amount represented legal work related to the transfer fee issue. The housing court conducted a hearing on the motion and

awarded plaintiff a total of $7,500 in attorney fees. On appeal, the park claimed that the attorney fees were excessive. The panel did not reach the question of the unreasonableness of the attorney fees because we found that some of the fees were based on the administrative fee. *Anderle, supra,* 101 Ohio App.3d at 128, 655 N.E.2d at 207–208. On remand, the housing court issued an order awarding attorney fees of $2,250, representing thirty percent of the original $7,500 award for work performed on the transfer fee issue.

■ R.C. 3733.09(B) provides that in addition to any recovery of actual damages suffered by a manufactured home park resident, the resident may also recover "reasonable attorney fees." That section is virtually identical to R.C. 5321.02, which applies to residential tenants generally and provides a direct analogy. The entitlement to and amount of attorney fees under R.C. 5321.02 lie within the discretion of the trial judge. *Drake v. Menczer* (1980), 67 Ohio App.2d 122, 123, 21 O.O.3d 429, 429–430, 425 N.E.2d 961, 962–963.

■ The housing court conducted a lengthy hearing in which it heard considerable evidence relating to plaintiff's motion for attorney fees. The park asserted two main complaints to plaintiff's motion: (1) that plaintiff's counsel failed to document adequately the number of hours expended on the case and (2) that the actual award of attorney fees far exceeded the amount of recovery.

Plaintiff's counsel explained that she did not keep complete billing records because she believed that the matter would be settled promptly. That was a miscalculation, inasmuch as this case has dragged on for over four years. Plaintiff's counsel did create a billing statement based upon her notes and recollection of the number of hours spent on the case. The housing court could reasonably find the re-created billing statement adequately documented her work on nearly one hundred filed documents and attendance at several depositions, hearings, and the previous appeal.

■ The park's second argument, that the attorney fee award is grossly disproportionate to the amount of the recovery, is likewise without merit. Under certain circumstances it may be that an award of attorney fees is so disproportionate to the amount of recovery as to be punitive. However, we interpreted the analogous attorney fee provisions of R.C. 5321.02 as serving in part to encourage the private bar to provide representation to tenants who could not ordinarily afford to hire an attorney. *Drake v. Menczer, supra.* A member of the Cuyahoga County Bar testified that the requested fee of $150 per hour was reasonable for the type of work performed. The housing court's award, based on the uncontested reasonable hourly fee, amounted to fees for slightly over sixteen hours of work. Given the nature of this case, we cannot say that the housing

court abused its discretion by awarding plaintiff $2,250 in attorney fees. The assigned error and cross-assignment of error are overruled.

*Judgment affirmed.*

SPELLACY, C.J., and MATIA, J., concur.